UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ARON McKNIGHT,

**DECISION AND ORDER**

        Petitioner,        **No. 09-CV-6168T**

   -vs-

SUPERINTENDENT,
ATTICA CORRECTIONAL FACILITY[1]


        Respondent.

_____

## I.   Introduction

*Pro se* petitioner Aron McKnight ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered November 18, 2002, in New York State, Monroe County Court (Hon. Patricia D. Marks), convicting him, after a jury trial, of two counts of Sexual Conduct Against a Child in the First Degree (N.Y. Penal Law ("Penal Law") § 130.75 [1][a]).

---

[1]    Petitioner has failed to identify a proper respondent to his § 2254 habeas corpus petition. Petitioner has named as his respondent People of the County of Monroe. The correct respondent for a § 2254 habeas proceeding is the name of the authorized individual having custody of the petitioner. 28 U.S.C. § 2243. Given that Petitioner is incarcerated in the Attica Correctional Facility, the correct respondent therefore would be the Superintendent of the Attica Correctional Facility. In light of Petitioner's *pro se* status and the fact that this in no way will prejudice Respondent, and in the interest of court efficiency, the Court will deem the petition amended to change the name of Respondent to the Superintendent of the Attica Correctional Facility. The Clerk of the Court is directed to terminate People of the County of Monroe as Respondent, add Superintendent of the Attica Correctional Facility as the new Respondent, and revise the caption of this action accordingly.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.   Factual Background and Procedural History

### A.   Indictment

Indictment No. 02-133 charged Petitioner with two counts of Course of Sexual Conduct Against a Child in the First Degree.  The first count of the indictment charged that Petitioner, on or about and between June 20, 1997 and September 1, 2001, engaged in two or more acts of sexual conduct, which included at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact, with a child less than eleven years old, to wit:  M.J. The second count of the indictment charged that Petitioner, on or about and between September 1, 1998 and September 1, 2001, engaged in two or more acts of sexual conduct, which included at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact with a child less than eleven years old, to wit: A.S.  See Resp't App. C at 4-5.

Indictment No. 401-2002 charged Petitioner with one count of Course of Course of Sexual Conduct against a Child in the First Degree for having engaged in two or more acts of sexual conduct, which included at least one act of sexual intercourse, deviate sexual intercourse or aggravated sexual contact, with a child less than eleven years old, to wit: Z.S.  See Resp't App. C at 13.

On July 10, 2002, the Monroe County Court granted the People's motion to consolidate both indictments.  See Resp't App. C at 64-68; Trial Trans. [T.T.] of 07/10/02 4.

**B.    The Trial**

**1.    The People's Case**

Darcus Jenkins, the mother of M.J., A.S. and Z.S., testified that in September of 1998, her husband, Todd Jenkins, moved out of the marital home after six years of marriage.  Shortly thereafter, she began a relationship with Petitioner, whom she had known to be a friend of her husband.  T.T. 605-608, 638.  In the year that followed, Darcus Jenkins and her children[2] occasionally spent the night at Petitioner's apartment on Clifton Street.  On other occasions, Petitioner would spend the night at Darcus Jenkins's house at 158 Syke Street.  T.T. 610-611.  Eventually, Petitioner moved into the Syke Street address with Darcus Jenkins and her children.  Darcus Jenkins usually slept with her daughters, while Petitioner slept with two of her younger sons, M.J. and A.S. T.T. 612.

Not long after Petitioner moved in, Darcus Jenkins sought treatment for a crack cocaine addiction at Park Ridge Hospital Rehabilitation Clinic and she remained there, with some occasional absences, from April of 1999 until the beginning of 2000.  T.T. 613-615.  During the time periods where Darcus Jenkins was in a

---

[2]        Darcus Jenkins testified that she has eight children.  T.T. 604.

rehabilitation program or actively using drugs, Petitioner stayed with her children at the Syke Street address.   T.T. 615-616. Although Darcus Jenkins's husband was no longer living with the children, he remained in their lives and, initially, exercised unsupervised visitation.  T.T. 616-617.  In 2000, Darcus placed her daughters in foster care based on her belief that Petitioner could not adequately care for girls.  T.T. 618-619.

A.S. and M.J., Darcus Jenkins's two younger boys, both testified that they had been subjected to repeated acts of sodomy at the hands of Petitioner, but that it was far more frequent once Petitioner moved into their house and they shared a bedroom. According to A.S. and M.J., Petitioner kept cooking oil and lotion, which he would use to lubricate his penis prior to abusing them, in the bedroom.  T.T. 288-289, 296, 388.

At the time of Petitioner's trial, Z.S., one of Darcus Jenkins's daughters, was nine-years-old.  She testified that Petitioner began sexually abusing her when she was six-years-old by placing his finger and his penis in her "butt" and by licking her "private part."  T.T. 497.  The abuse continued until she was placed in foster care.  T.T. 502.

Several of Darcus Jenkins's children witnessed their siblings being abused by Petitioner.  M.J. and his sister A.J. testified that, on one particular occasion when they were looking for A.S., they had peeked through a hole in Petitioner's bedroom.

From their vantage point, they testified that they saw Petitioner in bed with A.S.  They further testified that A.S. was laying on his stomach, while Petitioner was on top of A.S.  T.T. 295-296, 299, 533-536.  M.J. also testified that one night he and his sister Z.S. were sleeping on the floor and he woke to find Petitioner "on top" of Z.S., moving "up and down on her."  T.T. 303-304.  A.S. testified that he witnessed Petitioner sodomize M.J. and Z.S.  T.T. 384-385.  A.S. and M.J. also testified to various incidents of physical abuse at the hands of Petitioner, including being struck by "a switch, [Petitioner's] hand, a boot or a stick."  T.T. 298, 382.

M.J., A.S., and Z.S. testified that they told their mother about Petitioner's abuse.  Darcus Jenkins did not believe the children and usually disclosed their accusations to Petitioner, which, in some instances, led the children to be physically disciplined by Petitioner.  T.T. 297, 388-390, 502-503.  Because their mother would not help them, M.J. and A.S. began writing down what Petitioner had been doing to them, and gave these writings to their father.  As a result, Todd Jenkins confronted Petitioner and a physical altercation ensued.  T.T. 305, 390.

Circumstances changed in August of 2001 when Gregory Creswell ("Creswell"), a child protection worker assigned to the Monroe County Department of Social Services IMPACT team, met with M.J. and A.S.  T.T. 413-414.  Creswell testified that on August 15, 2001, he

went to 111 Westfall Road because there was a supervised visitation schedule between Darcus Jenkins and her children.  Creswell hoped to speak with each boy about their allegations of abuse.  When Creswell was asked to discuss his contact with A.S., he explained that A.S. was reluctant to speak with him at first, but, after a period of time, opened up to him and disclosed incidents of sexual abuse in the home where he was living.  T.T. 415-417.  Creswell further testified that M.J. was also reluctant to speak with him at first, but after a period of time, opened up to him and disclosed incidents of sexual abuse in the home where he was living. T.T. 417-419.  After Creswell's conversation with A.S. and M.J., the boys were removed from the home and placed in foster care. T.T. 420.

Ann Lenane ("Lenane") testified that she was a pediatrician at Strong Memorial Hospital and was the medical director of the REACH clinic where she evaluates children for physical or sexual abuse. T.T. 240.  Lenane testified that she met A.S. at the REACH clinic for an examination on August 21, 2001.  She observed two linear scars on the side of A.S.'s right eye, a linear scar on his upper right arm and a scar on the side of his nose.  T.T. 245-247, 249. Lenane testified that such scarring is consistent with having been struck with an object.  A.S.'s rectal area was also examined and found to be normal.  T.T. 249-250.  Lenane also examined M.J. and observed numerous scars on his face and linear scarring was found

on his back, abdomen, and leg.  Two small scars were noted outside of M.J.'s rectal area.  T.T. 252.

### 2.   The Defense's Case

Judith Neuderfer ("Neuderfer") a pediatric nurse practitioner who had treated A.S. and M.J. in the past, testified that she had seen each boy five-six times since they were infants and that she never noted anything "remarkable" during their physical examinations.  T.T. 652-653, 655, 659.  During cross-examination, Neuderfer acknowledged that A.S. and M.J. did not come into the clinic for examinations every year and that Petitioner was present for their interviews and subsequent examinations in 1999, 2000, and 2001.  T.T. 659-660.

Nathan Hanks ("Hanks"), a mental health therapist, worked with A.S. and M.J. from June of 2001 until October of 2001.  T.T. 661-663.  Hanks testified that from June through August of 2001 neither boy disclosed any sexual abuse even though Petitioner was not present for portions of their counseling sessions.  T.T. 663-664.  He testified further that Petitioner was always waiting for the boys after their sessions were completed and the boys were returned to Petitioner's custody after each session.  T.T. 667-668.

Anthony Barton ("Barton") testified that A.S. and M.J. came to his daycare facility for about one hour before school and one and one-half hours after school.  T.T. 669-670.  A.S and M.J. were two of twelve children that were supervised by Barton.  T.T. 674.

Barton testified that neither boy ever disclosed any abuse. T.T. 672.

Two Monroe County Child Protection employees, Kathy Bonisteel ("Bonisteel") and Monise Cylear ("Cylear"), testified that they were assigned the case involving the children of Darcus Jenkins at various times from May of 1999 until August of 1999. T.T. 762, 768. Bonisteel testified that she met with the children only once during that time period and that during that single meeting, they did not disclose any abuse. T.T. 768. Cylear testified that she had met with the children less than once a week during that time period and that no abuse was ever disclosed. T.T. 783-784.

Petitioner testified in his own defense, maintaining that M.J., A.S. and Z.S. were coerced by their father and grandparents to falsely accuse him of sexual abuse. Petitioner testified that Todd Jenkins harassed him constantly in an attempt to have M.J. and A.S. returned to his custody. T.T. 715. Petitioner also testified that although the doorknob on his bedroom door had been broken, he had placed a piece of wood over the hole, such that the interior of his bedroom was not visible from the hallway. T.T. 720. On cross-examination, he testified that, during a September 19, 2001 interview with Rochester police, he told Investigators Gerbino and Coniglio about the threats from Todd Jenkins. T.T. 743. Also on cross-examination, he testified that during that same interview, he

told Investigators Gerbino and Coniglio that he had covered the hole in his door with a board and a cloth.  T.T. 733.

### 3. The People's Rebuttal

Investigator Gerbino testified that during an interview with Petitioner on September 19, 2001, Petitioner indicated that the doorknob of his bedroom was off and that he had put a cloth, but not a board, over the hole to cover it.  T.T. 825.  On cross-examination, Investigator Gerbino testified that Petitioner never mentioned the name of Todd Jenkins in relation to the alleged "abusive relationship" Darcus Jenkins shared with him.  T.T. 829-830.

### C. Verdict and Sentence

Petitioner was found guilty of two counts of Course of Sexual Conduct Against a Child in the First Degree (pertaining to his crimes against M.J. and A.S.).  He was acquitted of one count of Course of Sexual Conduct Against a Child in the First Degree (pertaining to the allegations of abuse made by Z.S.).  T.T. 947-948.

On November 18, 2002, Petitioner was sentenced to consecutive twenty-five year terms of incarceration with ten years of post-release supervision.  Sentencing Mins. [S.M.] 22.

### D. The Direct Appeal

The Appellate Division, Fourth Department unanimously affirmed Petitioner's conviction on October 28, 2008.  People v. McKnight,

55 A.D.3d at 1315 (4th Dep't 2008) (Resp't App. E); lv. denied, 11 N.Y.3d at 927 (2009) (Resp't App. H).

###### E.    The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) his conviction was obtained by use of a coerced confession; (2) his conviction was obtained by use of evidence pursuant to an unlawful arrest; (3) his conviction was obtained by violation of the privilege against self-incrimination; (4) the prosecution failed to disclose evidence favorable to the defense; (5) his conviction was obtained by action of a grand jury or petit jury which was unconstitutionally selected and impaneled; (6) he was denied his right to appeal by the New York State Court of Appeals; (7) the trial court erred/abused its discretion; (8) cumulative trial error;  and (9) harsh and excessive sentence. See Pet. ¶ 22, Attach. at 1-2.  (Dkt. # 1).

### III. General Principles Applicable to Habeas Review

###### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).   A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).   The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10.   "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001).   Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id.

This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003).  A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995).  "The exhaustion

requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney General, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), cert. denied, 464 U.S. 1048 (1984). "The exhaustion requirement is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings, and is not satisfied unless the federal claim has been fairly presented to the state courts." Jimenez v. Walker, 458 F.3d 130, 148-149 (2d Cir. 2006) (internal citations and quotation marks omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state if it is clear that the state court would hold the claim procedurally barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9 (1989). Under such circumstances, a habeas petitioner "no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

## C.    The Adequate and Independent State Ground Doctrine

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Id. Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey, 933 F.2d at 121. A petitioner may establish cause by pointing to "some objective factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural

rule." <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986); <u>accord</u> <u>Coleman</u>, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. <u>See Reed v. Ross</u>, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750.

**IV. Merits of the Petition**

**1. Four of Petitioner's Claims are Unexhausted But Deemed Exhausted and Procedurally Defaulted**

Petitioner asserts, for the first time in the instant habeas petition, the following claims: (1) his conviction was obtained by use of a coerced confession; (2) his conviction was obtained by use of evidence pursuant to an unlawful arrest; (3) the prosecution failed to disclose evidence favorable to the defense; and (4) his conviction was obtained by action of an unconstitutionally impaneled grand or petit jury. <u>See</u> Pet. ¶ 22A, B, D.[3] Because Petitioner failed to properly exhaust these claims in state court, they are procedurally defaulted from review by this Court.

These claims are raised for the first time in the instant habeas petition, and are therefore unexhausted because Petitioner did not "fairly present" them to the state courts for review.

---

[3] Petitioner has more than one claim listed at ¶ 22D of the habeas corpus petition.

Daye, 696 F.2d at 191.   These issues were not brought before the state court on direct appeal, and Petitioner cannot appeal these claims in the Court of Appeals because he has already made one request for leave to appeal to which he is entitled.   See N.Y. Court R. § 500.20.  Collateral review of these record-based claims is also barred because they could have been raised on direct appeal but unjustifiably were not.   C.P.L. § 440.10(2)(c).   Thus, any attempt by Petitioner to seek state court review pursuant to § 440.10 would be futile.   Because a state court would find Petitioner's unexhausted claims procedurally barred from state review, they are deemed exhausted and procedurally defaulted from habeas review.   Grey, 933 F.2d at 120-21.

A finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.   See Murray, 477 U.S. at 492;   Wainwright, 433 U.S. at 87-91 (1977).   Petitioner has not alleged cause and prejudice to overcome the procedural default, nor has he demonstrated that the Court's failure to review these claims will result in a fundamental miscarriage of justice.   Accordingly, Petitioner's claims are dismissed as procedurally defaulted.

In any event, even if the claims were not procedurally defaulted, they are meritless to the extent they lack a factual

basis.   With respect to claims (1) and (2), Petitioner never confessed to law enforcement and there was no tangible physical evidence obtained from him at the time of his arrest that was introduced by the People at trial.   Similarly, with respect to claims (3) and (4), Petitioner alleges no supporting facts explaining how or in what way an alleged <u>Brady</u> violation occurred and/or his conviction was obtained by action of an allegedly unconstitutionally impaneled grand or petit jury.

## 2.   Denial of Right to Appeal

Petitioner argues, for the first time in the habeas petition, that he was "deni[ed] [the] right to appeal, by N.Y.S. Court of Appeals 4th Dept. Albany, New York 22226."   <u>See</u> Pet. ¶ 22D. Although this claim is raised for the first time in the instant habeas corpus petition and is therefore unexhausted for federal habeas purposes, it may be denied on the merits.[4]  See 28 U.S.C. § 2254(b)(2).

It is unclear to this Court precisely what Petitioner is arguing due to the ambiguity in which he has asserted this claim

---

[4]      The Second Circuit has not yet established a standard for denying unexhausted claims under 28 U.S.C. § 2254(b)(2), but all four districts in New York have applied the "patently frivolous" test for dismissing such claims. <u>See, e.g.</u>, <u>Love v. Kuhlman</u>, 2001 U.S. Dist. LEXIS 22572, 99 Civ. 11063 (S.D.N.Y. Dec. 12, 2001); <u>Cruz v. Artuz</u>, 2002 U.S. Dist. LEXIS 11150, 97 Civ. 2508 (E.D.N.Y. June 24, 2002); <u>Toland v. Walsh</u>, 2008 U.S. Dist. LEXIS 24616, 02 Civ. 0399 (N.D.N.Y. Mar. 26, 2008); <u>Hammock v. Walker</u>, 224 F. Supp. 2d 544 (W.D.N.Y. 2002).   A minority of courts in this Circuit have denied such petitions when they do not raise even a colorable federal claim.   <u>See</u> <u>Hernandez v. Lord</u>, 2000 U.S. Dist. LEXIS 10228, 00 Civ. 2306 (S.D.N.Y. July 21, 2000) (discussing cases applying this standard).   Under either of these standards, Petitioner's claim is meritless.

coupled with the absence of any supporting facts.  The record reflects that Petitioner appealed his judgment of conviction to the Appellate Division, Fourth Department, which unanimously affirmed his judgment of conviction on October 3, 2008.  See McKnight, 55 A.D.3d 1315 (4th Dep't 2008).  Subsequently, he sought leave to appeal in the New York Court of Appeals, which was denied on January 27, 2009.  See McKnight, 11 N.Y.3d 927 (2009).  Petitioner was entitled to one (and only one) appeal to the Fourth Department and one request for leave to appeal to the Court of Appeals, both of which he pursued.  See CPL § 450.10 [1]; N.Y. Court R. § 500.20.  Accordingly, Petitioner's claim that he was denied his right to appeal is meritless, and is dismissed.

**3.    Harsh and Excessive Sentence**

Petitioner argues, as he did on direct appeal, that his sentence is harsh and excessive.  See Pet., Attach. at 2.  The Fourth Department rejected this claim on the merits, finding that "the sentence is not unduly harsh or severe."  McKnight, 55 A.D.3d at 1317.  This claim is not cognizable by this Court on habeas review.

It is well-settled that a habeas petitioner's challenge to the length of his or her prison term does not present a cognizable constitutional issue if the sentence falls within the statutory range.  Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute,

its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."); <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.") (citing <u>Underwood v. Kelly</u>, 692 F.Supp 146 (E.D.N.Y. 1988), <u>aff'</u> <u>mem.</u>, 875 F.2d 857 (2d Cir. 1989)); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).  Because Petitioner's sentence falls within the permissible statutory range, he may not challenge the length of the sentence in the instant proceeding.

Here, Petitioner was sentenced to consecutive twenty-five year determinate terms of imprisonment.  S.M. 22.  This term is within the range prescribed by New York law.  <u>See</u> Penal Law § 130.75 [1][a], 70.02 [2],[3].

Accordingly, Petitioner's claim provides no basis for habeas relief and is dismissed.

**4.   Trial Court Erred in Failing to Properly Admonish the Jury**

Petitioner argues, as he did on direct appeal, that the trial court erred in failing to properly admonish the jury with respect to its functions, duties and conduct each time the court adjourned the trial.  <u>See</u> Pet., Attach. at 2.  The Fourth Department rejected this claim on a state procedural ground, finding that Petitioner had failed to properly preserve the issue for appellate review.

McKnight, 55 A.D.3d at 1317.   Consequently, this claim is procedurally barred from review by this Court.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment.  See Coleman, 501 U.S. at 729. Here, the state court relied on New York's preservation rule (codified at CPL § 470.05(2)) to deny Petitioner's claim because the issue had not been properly preserved for appellate review. See McKnight, 55 A.D.3d at 1317.  The Second Circuit has determined that CPL § 470.05(2) is an independent and adequate state procedural ground.   See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  The Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of it.

As discussed infra, a finding of procedural default bars habeas review of the federal claim unless Petitioner can show cause and prejudice, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  See Murray, 477 U.S. at 492; Wainwright, 433 U.S. at 87-91 (1977).  Petitioner has not alleged either.  Accordingly, his claim is procedurally defaulted from review by this Court, and is dismissed.

5.    **Remaining Trial Court Errors**

Petitioner argues, as he did on direct appeal, that various instances of trial court error, individually, deprived him of his right to a fair trial.  These alleged errors are as follows: (1) the trial court erred/abused its discretion in failing to instruct the jury that Petitioner had a constitutional right not to testify;  and (2) the trial court erred in prohibiting cross-examination of the male victims concerning alleged prior false allegations of sexual abuse.  See Pet. ¶ 22C, Attach. at 1-2.  As discussed below, neither of these claims provide a basis for habeas relief.

"Federal habeas relief 'does not lie for errors of state law.'"  McCall v. Artus, No. 06 CV 3365 (SAS), 2008 U.S. Dist. LEXIS 113213, at *24 (S.D.N.Y. Sept. 29, 2008) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).  In other words, " . . . a federal habeas court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States." Estelle, 502 U.S. at 67-68.  Therefore, for Petitioner to sustain a claim based on trial court error, he must show that any error of state law "'render[ed] petitioner's state trial fundamentally unfair' and thus violated his constitutional due process rights." Herring v. Meachum, 11 F.3d 374, 377 (2d Cir.1993) (quoting Tribbitt v. Wainwright, 540 F.2d 840 (5th Cir. 1976).  Petitioner is unable to meet this standard.

**A.   Trial Court Did Not Err/Abuse its Discretion in Failing to Instruct the Jury at Outset of Trial that Petitioner had Constitutional Right Not to Testify**

Petitioner argues that the trial court erred/abused its discretion in failing to instruct the jury at the outset of the trial that he had a constitutional right not to testify. See Pet. ¶ 22C, Attach. at 1. The Fourth Department rejected this claim, finding as follows:

> Defendant further contends that reversal is warranted because the court failed to instruct the jury at the outset of the trial that defendant had a constitutional right not to testify. Although defense counsel requested that instruction, he did so after the People's opening statements and thus the request was untimely. In denying the request, the court stated that it would give the instruction at the conclusion of the case, if requested to do so, and we conclude that the court's decision to wait until after summations to deliver the instruction was not erroneous.

McKnight, 55 A.D.3d at 1316-1317.

To warrant habeas relief based on an erroneous state jury instruction, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973);  accord Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001);  Smalls v. Batista, 191 F.3d 272, 277 (2d Cir. 1999).   In addition, [t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's

judgment is even greater than the showing required to establish plain error on direct appeal.  The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process . . . ."  Henderson v. Kibbe, 431 U.S. 145, 154 (1977); accord Estelle, 502 U.S. at 72 (1991); Roy v. Coxon, 907 F.2d 385, 391 (2d Cir. 1990).  Moreover, petitioner bears an "especially heavy" burden in demonstrating constitutional error based on an omission because an "an omission, or an incomplete [jury] instruction, is less likely to be prejudicial than a misstatement of law." Henderson, 431 U.S. at 155;  accord Blazic v. Henderson, 900 F.2d 534, 542 (2d Cir. 1990).  Thus, to succeed on this claim, Petitioner must show that the trial judge's omission of certain jury instructions or the incomplete nature of his preliminary instructions (1) violated New York law and (2) resulted in a deprivation of his right to due process.  See Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001); Manson v. Haponik, 05-CV-3412 (BMC), 2007 U.S. Dist. LEXIS 51934, at *10 (E.D.N.Y. July 18, 2007).

Here, Petitioner has not shown that the trial court's failure to instruct the jury at the outset of the trial that Petitioner had a right not to testify was an error of state law, much less an error of federal constitutional dimension.

CPL § 300.10(2) provides:  "Upon request of a defendant who did not testify in his own behalf, but not otherwise, the court

must state that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn."  This rule prohibiting a "no inference" charge absent defendant's request applies to instructions given during voir dire. See People v. Koberstein, 66 N.Y.2d 989 (1985);  People v Boyd 53 N.Y.2d 912 (1981).

CPL § 270.40 provides:

> After the jury has been sworn and **before the People's opening address**, the court must instruct the jury generally concerning its basic functions, duties and conduct. Such instructions must include, among other matters, admonitions that the jurors may not converse among themselves or with anyone else upon any subject connected with the trial; that they may not read or listen to any accounts or discussions of the case reported by newspapers or other news media; that they may not visit or view the premises or place where the offense or offenses charged were allegedly committed or any other premises or place involved in the case; that prior to discharge, they may not request, accept, agree to accept, or discuss with any person receiving or accepting, any payment or benefit in consideration for supplying any information concerning the trial; and that they must promptly report to the court any incident within their knowledge involving an attempt by any person improperly to influence any member of the jury.

CPL § 270.40 (emphasis added).

In this case, since defense counsel waited until after opening statements had been delivered, the trial court did not err/abuse its discretion in refusing to give the requested instruction at the outset of the trial.

-24-

Moreover, even if the trial court erred or abused its discretion in refusing the requested instruction, such error does not, *ipso facto*, provide a basis for habeas relief. See Estelle, 502 U.S. at 71. The issue is whether the omission of this one particular preliminary instruction "so infected the entire trial that the resulting conviction violate[d] due process." Cupp v. Naughten, 414 U.S. at 147. The Court finds that it did not. Although the trial court refused to give the requested preliminary instruction at the outset of the trial, it offered to give the instruction at the conclusion of the case, if the defense requested. T.T. 237. Petitioner subsequently testified at trial. Additionally, the Court notes that, in its preliminary jury instruction, the trial court judge explained "what the trial involves and what roles the Judge and jury play[,]" specifically stating that "the defendant is presumed innocent." T.T. 7-10. And, its final jury instruction, the trial court conveyed to the jury the burden of proof and the presumption of innocence, specifically stating that Petitioner was not required to prove or disprove anything. T.T. 901.

Accordingly, the Court cannot find that the trial court's omission of the requested preliminary instruction at the outset of the trial "so infected the entire trial that the resulting conviction violate[d] due process." As such, habeas relief is unavailable to Petitioner, and the claim is dismissed.

**B.   Trial Court Did Not Err in Prohibiting Cross-Examination of Male Victims Concerning Alleged Prior False Allegations of Sexual Abuse**

Petitioner contends that the trial court erred in prohibiting him from cross-examining the male victims concerning alleged prior false allegations of sexual abuse.  See Pet., Attach at 1-2.  The Fourth Department rejected this claim on the merits, holding as follows:

> Defendant contends that County Court erred in prohibiting him from cross-examining the two male victims concerning alleged prior false allegations of sexual abuse, inasmuch as confidential reports establish that such allegations were indeed made.  We reject defendant's contention.  Based on our review of the confidential reports, we conclude that there is insufficient proof in those reports to establish that the two male victims made any prior allegations that were false or suggestive of a pattern that casts doubt on the validity of, or bore a significant probative relation to, the instant charges.

McKnight, 55 A.D.3d at 1316 (internal citations and quotations omitted).

New York's Rape Shield Law (codified at CPL § 60.42), which the trial court determined precluded the admission of evidence of prior sexual abuse or accusations of abuse between and among the male victims, is an evidentiary rule limiting the admissibility of evidence of a victim's sexual conduct in sex-offense cases. T.T. 214-215; see CPL § 60.42.   As discussed infra, "federal habeas corpus relief does not lie for errors of state law." Estelle, 502 U.S. at 67 (1991)(citation omitted).  An evidentiary

ruling, which is a matter of state law, when erroneous, may provide a basis for habeas corpus relief only if a petitioner establishes that it "so infused the trial with unfairness as to deny due process of law." Id. at 75 (citation omitted).  Here, Petitioner cannot demonstrate an error of state law, let along an error of federal constitutional magnitude.

CPL § 60.42 provides as follows:

> Evidence of a victim's sexual conduct shall not be admissible in a prosecution for an offense or an attempt to commit an offense defined in article one hundred thirty of the penal law unless such evidence:
>
> 1. proves or tends to prove specific instances of the victim's prior sexual conduct with the accused; or
>
> 2. proves or tends to prove that the victim has been convicted of an offense under section 230.00 of the penal law [i.e., offenses relating to prostitution] within three years prior to the sex offense which is the subject of the prosecution; or
>
> 3. rebuts evidence introduced by the people of the victim's failure to engage in sexual intercourse, oral sexual conduct, anal sexual conduct or sexual contact during a given period of time; or
>
> 4. rebuts evidence introduced by the people which proves or tends to prove that the accused is the cause of pregnancy or disease of the victim, or the source of semen found in the victim; or
>
> 5. is determined by the court after an offer of proof by the accused outside the hearing of the jury, or such hearing as the court may require, and a statement  by the court of its findings  of  fact  essential  to  its

> determination, to be relevant and admissible
> in the interests of justice.

The record reflects that Petitioner sought to cross-examine the two male victims about prior claims of sexual abuse made by the victims against a third party.  Initially, Petitioner claimed this evidence would demonstrate confusion on the part of the victims.  T.T. 5-6.  Citing counsel's failure to demonstrate confusion on the part of the victims, the Court precluded any comment during voir dire about the existence of past abuse.  The trial court noted, however, that should it become apparent that the victims confused Petitioner's abuse with what they may have suffered at the hands of others, defense counsel could renew his request.  T.T. 7.  Then, prior to opening statements, Petitioner slightly altered his initial theory of admissibility.  Defense counsel's argument was predicated on his speculation that the victims would be viewed as "innocents" by the jury and that their use of sexually explicit terminology would cause the jury to believe that Petitioner must be guilty, for if he was not, how would the children know the meaning of such words.  T.T. 208-210.  The trial court denied Petitioner's application, noting that the proposed line of questioning would not be relevant unless the prosecutor insinuated that the only way the victims would know about certain sexual topics was because of what was alleged at trial (i.e., that Petitioner sexually abused them).  T.T. 210.  Finally, Petitioner argued that the prior allegations by

the victims were relevant as they were false allegations of sexual abuse.  T.T. 116-117.  In reviewing Petitioner's position, the trial court found as follows:

> Once you provide proof that M.J. reported that his siblings, he and his siblings engaged in anal intercourse, then it becomes relevant because of his doctor's testimony.  But my recollection is that no such specific complaint is documented anywhere.  So once you provide the document, that document itself, we can go into that.  I understand that your application is also because the allegations made by A.S. and Z.S. were found to be false, and the finding of their falsity is really not admissible.

T.T. 278-279.

In this case, since the proposed cross-examination did not fall within any of the four categorical exceptions to the general rule of inadmissiblity, Petitioner was required to make an offer of proof establishing that the evidence was both relevant and admissible in the interest of justice.  CPL § 60.42 [5].  As found by the Fourth Department, he failed to make such an offer of proof. Petitioner has failed to present any evidence to rebut the presumption of correctness of the factual determination made by the Fourth Department that there was insufficient proof in certain confidential reports to establish that the two male victims made any prior allegations that were false.  See 28 U.S.C. § 2254(e)(1).

Federal courts in this Circuit have held that rape shield statutes represent an appropriate limit on the Sixth Amendment's right of an accused to "confront his accusers" through the

opportunity for effective cross-examination. <u>See e.g.</u>, <u>Carroll v. Hoke</u>, 695 F. Supp. 1435, 1439 (E.D.N.Y. 1988) (exclusion of testimony pursuant to Rape Shield Law did not violate defendant's constitutional right of confrontation where ample evidence impeaching victim's testimony was elicited and additional evidence was not really relevant to alibi defense-as opposed, perhaps, to consent defense), <u>aff'd</u>, 880 F.2d 1318 (2d Cir. 1989)).   Moreover, the Court notes that under Federal Rule of Evidence, Rule 412, evidence of the victim's sexual conduct is significantly proscribed where the defendant is accused of a sexual offense.   The failure of Petitioner to demonstrate that the male victims' allegations of abuse by others was false or constituted a pattern which cast doubt on their credibility rendered the proposed evidence irrelevant.

Thus, Petitioner has failed to demonstrate that the trial court's application of CPL § 60.42 was erroneous, or that it infected his entire trial such that the resulting conviction violated due process.   Therefore, the Court finds that habeas relief is not warranted, and the claim is dismissed.

## 6. Cumulative Error

Petitioner contends, as he did on direct appeal, that cumulative errors -- i.e., the trial court errors discussed above, along with trial counsel's "mistaken advice that he had to testify" -- deprived him of a fair trial.   <u>See</u> Pet. ¶ 22, Attach. at 1-2. The Fourth Department rejected this claim on the merits.   <u>McKnight</u>,

55 A.D.3d at 1317.  As discussed below, this claim provides no basis for habeas relief.

The Second Circuit has recognized that the "cumulative error" rule is grounds for federal habeas relief, but to be granted only in limited circumstances.  See Sanders v. Sullivan, 701 F.Supp. 1008, 1012 (S.D.N.Y. 1988).  In order for a cumulative error claim to be the basis for federal habeas relief, it must be shown that the alleged individual errors are in fact erroneous trial court rulings.  Joyner v. Miller, 01 Civ. 2157 (WHP) (DF), 2002 U.S. Dist. LEXIS 15160, at *42-44 (S.D.N.Y. Jan. 7, 2002).  In addition, if actual errors are discovered but it cannot be shown that one of those errors requires reversal of the conviction, then the "whole body of error is to be assessed for prejudicial effect."  Sanders, 701 F.Supp. at 1013.

"In order for the cumulative effect of errors to warrant a new trial, the claimed errors must be 'so prejudicial that they rendered petitioner's trial [] fundamentally unfair.'"  Joyner, 2002 U.S. Dist. LEXIS 15160, at *42 (quoting Collins v. Scully, 878 F.Supp. 452, 460 (E.D.N.Y.1995)).  However, the Supreme Court has "defined the category of errors that violate 'fundamental fairness' very narrowly."  Dowling v. United States, 493 U.S. 342, 352 (1990).  "A habeas petitioner may not aggregate merely unfavorable rulings or events to show a lack of fundamental fairness."  Collins, 878 F.Supp. at 460.

Upon careful review of the record, there is no evidence that any of the alleged errors rise to the level of a federal constitutional violation of Petitioner's right to a fair trial. Notably, Petitioner's claims specifically related to alleged trial court error, individually, are either meritless or procedurally defaulted.  Additionally, Petitioner makes no showing that any of the alleged errors prejudiced his trial to the required level where it was rendered "fundamentally unfair."  See Collins, 878 F.Supp. at 460-61 (rejecting cumulative error claim where petitioner "failed to establish inherent or actual prejudice resulting from any of the alleged errors").  Accordingly, Petitioner's cumulative error claim lacks merit and is dismissed.

## V.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2),   I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:      April 11, 2011
            Rochester, New York